Be seated. The clerk will call the next case. Case number 3-12-06-82, People of the State of Illinois, appellees by Gary Benedict v. Timothy Thomas, appellant by Philip Payne. Mr. Payne, you may proceed. Good afternoon, Your Honors, and may it please the Court. I'm Phil Payne from the State Appellate Defender. I'm here on behalf of the appellant, Timothy Thomas. Mr. Thomas has raised three issues for this Court's review. I plan to focus on the first issue concerning the defense of entrapment and the sufficiency of the State's evidence to reflect that defense, or the lack thereof. But if Your Honors have any questions about the other two issues, I would be happy to answer them. Now, Mr. Thomas stands before this Court convicted of two crimes, armed violence and possession of heroin. And the armed violence conviction is predicated on the fact that at the time of his arrest, he was found to be in possession of a revolver and heroin. Now, that revolver had been provided to him minutes before by a confidential informant by the name of Victor Johnson. Under the facts of this case, which I'll get to in greater detail in a moment, the State simply failed to carry its burden of disproving the defense of entrapment that Mr. Thomas committed at trial. And for that reason, I ask that this Court find entrapment as a matter of law. Now, Victor Johnson had a contract. As a matter of law. Yes, as a matter of law, Your Honor. Now, Victor Johnson had a written contract with the police under which he would be paid money in exchange for information. And Officer Barish, who was Johnson's liaison with the police, testified that Johnson stood to make more money if his information led to the recovery of a gun than if it did not. If it was just a simple drug arrest, in other words. Barish further testified that there was no prescribed target given to Johnson. He was essentially acting as a free agent and left to his own devices to come up with information that he'd then call into the police. And one such call came on August 26, 2010. On that date, Johnson and Thomas were both staying at a house of ill repute on Greenlawn Avenue. And Thomas testified that he was a heroin addict with a substantial habit, about 15 to 20 bags a day. That heroin addiction had left him in a straitened with his wife, I should say. They were separated, and that's why he was at the house to begin with. And on the date in question, Thomas and his wife were going to meet up to discuss a potential reconciliation. Minutes before his wife was to arrive to pick him up, Victor Johnson pulled Thomas aside and said, I need you to hold on to something for me. At that point, Victor Johnson told him, I'm going to give you three bags to hold on to this for me. And he then gave Tim Thomas three bags of heroin. Thomas, ever the addict, immediately grabbed the heroin, began to chop it up, and snorted it. In the midst of this, his wife arrived. He dusted himself off, went to the fridge to grab a beer for the road, and was on his way out of the door when Johnson stopped him and said, quote, ain't you going to get the stuff I asked you to hold? Here, take this, and handed Mr. Thomas the gun. Thomas immediately unloaded the gun, put the bullets in his pocket and the revolver in his waistband, and went on his merry way. Thomas also testified that he only took the gun because Victor Johnson had given him the three bags of heroin in return. So Thomas leaves the house, and before the car has pulled away from the curb, Victor Johnson's on the phone with Officer Barish, tipping him off to a man leaving 1019 Greenlawn in a silver car with a gun and drugs, the very same gun that Victor Johnson had just given my client. The police pull the car over, arrest Thomas, recover the contraband, and Thomas makes a statement to police, admitting to possessing these items and explaining that he got the gun from Victor Johnson. That last fact was corroborated by Thomas' testimony of Officer Cover and Detective Lawrence, who interviewed Thomas at the arrest. They both testified that Thomas told them that he got the gun from Victor Johnson. But I know in your briefs and your argument relies on the fact that Johnson inducing him with the drugs and giving him the gun, that he wouldn't have a gun. But didn't he have a, he's already had a conviction for a weapons charge in the past? Yes, Your Honor. Tim Thomas does have a conviction for unlawful use of a weapon by a felon in 1995. But, critically, that fact was not put before the jury at trial. The state settled for a stipulation that said, bare bones, Tim Thomas had prior felony conviction, unspecified. So the jury was not privy to the fact that Tim Thomas had a prior gun conviction. And, of course, on review, we are limited to the facts that the jury heard. Moreover, even if we're to consider that Thomas had a prior felony conviction from 1995, I'd point this court to the decisions in People v. Bonner, where the defendant had a prior drug delivery conviction. He was found to be entrapped for another drug conviction years later. And the court found that that prior conviction did not establish predisposition for him to commit the instant crime on the date in question. And in Bonner, did that defendant refuse the offer of selling drugs just once or twice? Or wasn't it many different times? Yes, Your Honor. In Bonner, the informant who did the inducing first implored the defendant to deal drugs to her friend, who turned out to be an undercover police officer. She relied on general exhortations, pleas, and the defendant at first refused. But here's the critical fact. At the time when the informant in Bonner offered the defendant a quid pro quo, I'll give you sex in return for you doing this drug deal, at that point the defendant said, sure. He jumped at the chance of getting the benefit of having sex with the informant. The two have sex, he does the drug deal, and the second district finds that he is entrapped as a matter of law, notwithstanding the fact that he took the informant up on this offer. In fact, it was because he seized that quid pro quo once it was dangled in front of him that this was entrapment. And the same principle applies here, where it's not sex for drugs or committing a drug deal. It's dangling drugs, the object of my client's addiction, in front of him and thereby securing his agreement to take a gun. And this issue is getting predisposition. Whether the state proved beyond a reasonable doubt that my client was predisposed to take the gun. Now, as we discussed, there was no evidence presented to the jury that my client had a prior gun conviction. There was also evidence presented by the defense that my client was hesitant to take the gun. First, Thomas testified he only took the gun because Victor Johnson bribed him into doing it. And critically, that satisfies the slight evidence standard for presenting and thereby raising the defense of entrapment. At that point, the burden shifts to the state to disprove a lack of predisposition or to prove predisposition beyond a reasonable doubt. And the state didn't do that in this case. They basically relied on the notion that Tim Thomas was a drug addict and he was desperate. And he was a prior felon, unspecified as to what that felony was. So ergo, because of his general criminality, he was predisposed to take the gun. But in People v. Plachik, the Illinois Supreme Court stated that in order for other crimes evidence to be relevant to a defendant's predisposition in an entrapment case, that other crimes evidence has to be specifically relevant to, that's language from Plachik, specifically relevant to the defense of entrapment. In other words, the crime that he's alleged to have committed in this case. And in this case, because he was induced to do so by the state. So unless the state presented evidence to show that before Victor Johnson dangled the drugs and put out that inducement for my client, that Tim Thomas was predisposed to take a gun or possess a gun on that date, then they failed to carry their burden of proof. And the inducement in this case, the quid pro quo, drugs for holding the gun, was particularly insidious in this case because it preyed on my client's weakness for heroin. Johnson knew that Tim Thomas was a heroin addict. He knew that by virtue of that addiction, Thomas was unlikely to resist three free bags of heroin held in front of his face. And also Johnson knew that he stood to make more money if Thomas was later arrested with a gun than if he just didn't have a gun. So Johnson had this perverse incentive to make sure that my client had a gun before he called in the tip on the crime that he himself had orchestrated. It's not unusual to have weapons and guns around drugs, is it? It is not, Your Honor. Generally speaking, there are many cases acknowledging that guns and drugs often go together. But that general statement of law doesn't carry the burden of showing that my client was predisposed to have a gun on the date in question when he took the gun solely because he was induced to do so by Victor Johnson. I point this court to the case of People v. Collin. This is a case where a defendant's vulnerability is capitalized on by an informant. In that case, the defendant was deeply indebted and went to an informant for a loan. The informant says, I'm not going to give you a loan, but you should consider dealing drugs. That's a way to make fast money. And the appellate court found entrapment as a matter of law based on the defendant's testimony. They said the defendant, by virtue of his financial condition, was particularly susceptible to the state's inducement. Now, with a minor tweak, those words apply with power and force to this situation. And Thomas, by virtue of his heroin addiction, was particularly susceptible to Victor Johnson's inducement of the drug crime. These scenarios where the informant capitalizes on a weakness of the defendant brings to mind the decision of U.S. v. Sherman, where the court said that thus the government plays upon the weakness of an instant party and beguiles him into committing the crimes which he otherwise would not have committed. Now, granted, Thomas was not innocent as to possession of the heroin. And that's why we don't raise entrapment as to his heroin addiction. He accepts that he was guilty of possessing heroin because he clearly had a predisposition to commit it. He was an addict. But that weakness, that vulnerability, is the very thing that the state's agent used to lure him into a crime that he was not predisposed to commit, possessing a gun. And it was not the defendant's burden to prove that he was entrapped. It was the state's burden to disprove the defense of entrapment. The evidence in this case is woefully short of that burden. And so for this reason, we ask for this court to reverse our right. Thank you. Any questions? Thank you, Mr. Fain. Thank you. Mr. Genetovic? May I please start, counsel? With respect to the defense of entrapment, I do not wish to overstate the defense counsel's argument. But it seems to me that what's been argued today is that basically anyone, any drug addict out there who is approached by either a confidential informant or an undercover agent who is in any way, shape, or form maybe offered narcotics in exchange to take and do this or that, that they can claim that they have been improperly induced as a matter of law into committing a crime. Now, first of all in this case, and I'm not really, I don't know if I really heard counsel correctly or not, but I just wish to clarify a fact. And that is, under cross-examination at 675 of the record, Officer Barish testified that he never told Victor Johnson that if he got someone with a gun, he would get more money. I just wish to take and point that out because it seems to me that what we have here is we have a situation where a defendant is using his drug addiction as a means of trying to take and say, hey, I'm a drug addict, I'm a drug dealer, I admit to that, I admit to carrying a weapon, but because of the fact that someone offered me drugs, that my conduct or my decision to accept those drugs and to do whatever I do after that is excusable because I've been entrapped. I don't think that is what the law is. I don't think that is what the law of entrapment is. In this particular case, I've approached the defense of entrapment two ways. Number one, I basically said that even if we accept at face value the defendant's testimony, that that testimony in and of itself is not slight evidence of entrapment. It's not slight evidence of entrapment because the offer was made, the first offer of the facts as I see them, was made for the defendant to hold a certain number of packets of heroin for the defendant because he and his girlfriend were going out and doing something. In exchange for the defendant holding the heroin, Johnson offered the defendant, you can keep three bags yourself. He said, sure. The defendant jumped on the opportunity, accepted the offer. He didn't have to, but he did, and he started using cocaine. While he was snorting the heroin, his wife arrives. He tells Victor, tell her I'll be out there in a minute. Victor goes and says he'll be out in a minute. Angela, the defendant's wife, corroborates that. As the defendant is walking out the door, that according to the evidence is when Victor Johnson supposedly said, here, take this and offer them the gun, to which the defendant took it, emptied the gun, put the bullets in his pocket, put the gun in his waistband and left. This whole idea, this whole argument that was made today that the heroin was a bribe to the gun, the heroin was an offer for the gun, that the defendant took the gun because he was getting paid to take the heroin, there's no evidence of that in the record of that at all. I know that's what the defendant would like this court to accept. I know that's what he'd like the evidence to show, but that's not what the evidence is. Well, the informant sets up the whole scene in this case, right? Supplies the heroin, then the gun, right? If you accept the defendant's testimony. So it sets up the whole scene then, so that the defendant can commit this set-up scene with the drugs and then the gun, and that's the whole offense. Everything's supplied by the informant, right? If you accept the defendant's testimony. If that was the only evidence. That's not the only evidence. I'm just going off the fact of just saying that... I mean, I'm talking about their argument. Well, that's what the argument is, but the argument is he supplied that... Of course, that's the evidence against the guy. Well, that's the evidence that's used against him, but the question is, is that an improper inducement? And more so, according to their argument, they tied the gun to the drugs. They say the drugs are payment to hold the weapon, and that's the evidence of inducement, that's the evidence of the entrapment. The problem is, there's no evidence to support that. There's no evidence. In other words, if the evidence was Victor Johnson said, Hey, Mr. Defendant, if you hold this gun for me, I'll give you three packets of heroin. That would be an inducement, potentially, at least with slight evidence of entrapment, without any other evidence. Are you admitting that, that that would be an inducement? I'm not saying... If that were the only evidence, that would be the slight evidence of inducement if that type of an offer had been made. That offer was not made here. That's not what our evidence is. There is no inducement. There's no connection. There's no entrapment here at all. The factual elements of the crime all came from the informant, right? The direct evidence. The direct evidence that came from the defendant. Well, the heroin, the gun, all came from him. Okay, if you're saying the direct evidence that was induced in this case as to where the evidence came from, that came from the defendant, and that supposedly, that evidence was that Victor Johnson supplied the heroin and supplied the gun, okay? The question is, does the evidence that was induced, that shows that the offering of the heroin was made first and the gun didn't come out until later, until after his leaving, does that take and establish, does that support the defendant's argument that he was bribed, that he was somehow induced to take the gun because he was paid the heroin? What was the timeline from getting the packets of heroin and getting the gun to going out the door? I don't think there was a timeline established. I mean, I recall it was saying a timeline. It wasn't a timeline. Is that a matter of minutes, seconds? Well, it wasn't seconds because he had enough time to take and shop it, to take and whatever he could do with it. So the wife came and the wife had to wait a couple minutes before he came out. I mean, I don't remember anything in this about, in what we have about time, you know, beginning to the end. There is an end. Yeah. But the thing is, but to me the whole thing with the inducement for the gun is where is the connection between the heroin and the gun? Where is the connection between the heroin being used as a payment, as an inducement for the defendant to take the gun? That's entrapment. You're inducing him because the crime he's complaining about is armed violence. It's possession of the gun. Where is the evidence that connects the drugs to the gun as the defendant has argued? There isn't any. To me that goes two ways. I mean, in favor of the state, it says that people using drugs and handling drugs and having the propensity to commit offenses with drugs is not unusual for them to have guns. And so why can't you say they're induced to have a gun? And you're using it the different way than saying that. Well, the whole thing is, I'm responding to an argument that he's basically saying he was induced to possess the gun. Because if he was induced to possess the gun, he was entrapped. In other words, was he innocent? Would he not have basically done this? Was he somehow cajoled? And what they're using is because there's no threats, there's no pressure. So if the defendant says, I wasn't pressured into doing this, he willingly accepted the offers. But what they're trying to do is they're trying to use his addiction and they're trying to connect that with the drugs and the guns so they can say, well, I was paid for this. I was bribed to do this. I was subtly coerced into doing this. There's a case that I cited in my brief called People v. Husted, H-U-S-T-E-D. It's at 97 Elap Third, 160. It's, I think, an 83 case out of the Second District. To me, it presents a very similar situation to that here. In that Husted case, he had a gentleman by the name of McReavy. He was an informant. He had an individual by the name of Burns who was the police officer. After McReavy had been arrested and after he was released on incognizance, he became an informant for police. And what he did is he basically established a relationship between himself, the defendant Husted, and Burns. And what the appellate court in Husted basically said was what happened was McReavy and Burns had talked to Husted and said, hey, look, you can make a lot of money selling drugs. You can get yourself a better car, get yourself a better house. You can get out of this dump. You can do this and that. Subsequently, defendant sold drugs to Burns, claiming that he got the drugs from McReavy, the informant. McReavy supplied the defendant with the drugs and then sold them to Burns. What the court said in dealing with the defendant's theory that he wasn't trapped, the defendant argued that he was entrapped by McReavy and Burns into selling drugs by glorifying the financial advantages incidental thereto. The court said that doesn't establish entrapment of the unwary, innocent. In this case, they said it tended to demonstrate that the selected medium was suitable for cultivation. That is, the defendant was predisposed to cooperate and needed only the opportunity to do so. In other words, basically Husted, he was willing to sell drugs. He just did not have the opportunity, did not have the, if you will, situation in place where he could do that. But when given that offer, even though he was told by these other people, hey, you can make a lot of money doing this, what he basically did is he seized that opportunity. That's exactly what happened in this case. The defendant simply seized an opportunity to take care of him. And when he was offered the gun, even though he knew he was on parole, even though he knew he shouldn't possess it, he accepted it. Offered the opportunity to act, he did so. Basically, I guess what the whole question is down to is, can we take and say that based on the evidence, we have a situation here where Victor Johnson did something that acted upon the mind of an innocent person? Because even if you have all the other elements, entrapment as a matter of law is not established. Even if all the other elements are established, if those elements do not induce the mind of an innocent person to do that which otherwise wouldn't have. And that is what's missing here. That's the reason why I say there's no connection between the narcotics, the drugs that were offered, and subsequently the offer to take the gun. There's no connection. And basically, he chose to do this on his own, on his own free will. He's not a person of an innocent mind. And in making that decision, what we can look at, we can't actually do, look at, because this business about being a drug dealer and being a heroin addict cuts both ways. We can look at the fact that he is a drug dealer. We can look at the fact that he is a drug user and make a determination that, hey, this is not an innocent mind. And so on the facts that we have and the evidence that we have, entrapment, I don't think slight evidence was established. And even if we assume that there was, there was more than enough evidence because Victor Johnson testified. First of all, Victor Johnson, when he talked about credibility, here's a guy in a stand in front of a jury saying, yeah, I'm a drug dealer. There's no way I'm ever going to take and give anybody free drugs. Let alone 15 to 20 dime bags, which would be 10 bucks a pop. Okay? I'm not going to take and give that to anybody. Thank you. He denied doing it. When you look at the confession, when you look at the statements that were made, basically nothing indicates, again, this connection. The jury had enough evidence before it to reject the entrapment defense. As a matter of fact, I think the evidence here on the record does not establish entrapment as a matter of law. And therefore, we would ask this court to affirm the defendant's armed robbery conviction. If there are any other questions, I'd be more than happy to answer on any of the issues. Thank you, Mr. Genetovic. Mr. Payne. Thank you, Your Honor. First, the opposing counsel argued that there was no evidence of inducement in this case. In essence, counsel tried to separate out the drug inducement from the gun and claimed that there was no evidence of inducement presented at trial. But the state is trying to thread a pretty narrow, pretty thin needle here because there was plenty of evidence to demonstrate that this was a quid pro quo. You take these drugs for your personal use and then you hold on to this contraband for me, including the revolver. I'll point this court to a quote from Victor Johnson. He said to Timothy Thomas, I'm going to give you three bags to hold on to this for me. He gave him the three bags. This, we don't know what the this is, but as Tim Thomas, after he snorted the heroin that he had just been given by Victor Johnson, he's heading for the door to meet his wife, and Victor Johnson says, quote, ain't you going to get the stuff I asked you to hold? Here, take this, and hands him a gun. That sounds like the quid pro quo that I described before. And Thomas testified that he only took the gun because Johnson gave him three bags of heroin to do so. So contrary to what the state argues here, there was ample evidence, more than slight, to raise the defense of entrapment to indicate that there was an inducement here in the form of the quid pro quo. I'm going to give you three bags of drugs so you can hold the gun. For how long? The record is completely ambiguous as to that. I don't think that Victor Johnson... For what purpose? I think Victor Johnson had the purpose of planting a gun on my client so that he would then immediately be arrested and Victor Johnson would stand to hold or to earn more money as a police informant under his contract with Peoria Police. So there's definitely more than slight evidence of an inducement here. And at that point, the burden shifts to the state to rebut that evidence of an inducement beyond a reasonable doubt. And counsel said repeatedly, if you accept defendant's testimony, if you accept defendant's testimony, and I acknowledge that the defense here was raised by Timothy Thomas' testimony by and large. It was corroborated to an extent by the state's evidence, but it was raised by the defendant's testimony. And implicit in the state's argument is that when assessing the evidence in the light most favorable to the state, this court must for some reason reject defendant's account of the inducement. And that argument by the state finds no support in the Illinois authority. In fact, every Illinois decision finding entrapment as a matter of law, and there are numerous cases doing so, those cases, those courts are relying upon the defendant's testimony of the inducement and finding that the state failed to rebut it beyond a reasonable doubt. After all, that's that burden allocation in an entrapment case. For instance, in People v. Day, a third district case that opposing counsel is indubitably very familiar with since he argued it on appeal. There, the appellate court, this court, found that the defendant was entrapped as a matter of law on the basis of his testimony, that he had never been engaged in drug deals before, that this was his first time, and that he resisted the informant's overtures at the beginning and he was eventually worn down. Thank you. So this court can absolutely rely on the defendant's testimony to establish entrapment as a matter of law. The jury obviously rejected it. The jury rejected it, but this court has a duty to reverse outright where the evidence is so improbable, so unsatisfactory that no rational juror could find it sufficient beyond a reasonable doubt. And in this case, the state appears to be relying on Victor Johnson's testimony. Only two people were privy to this inducement, Tim Thomas and Victor Johnson. And opposing counsel has tried to rehabilitate Victor Johnson and claim he's a credible witness. But Victor Johnson self-destructed on the stand. He denied being a confidential informant at all in this case or any other. He denied making the call to Officer Barish on the date in question. Did she testify that she received the call from Victor Johnson? Yes, Officer Barish testified at length and gave very clear detail about getting the call on the date in question. I think it's actually he, Officer Barish. Sorry. No, I'm not offended. Then relayed that information to Officer Cover because Barish was out of town. Officer Cover then stops the car and effectuates the arrest. So furthermore, Victor Johnson, and this is important, Victor Johnson acknowledged having a selective memory about the case and said, quote, I shouldn't be involved in this case because I have no recollection of this year or me being a part of this case, period. That's the testimony that the state wants this court to rely upon in order to find that the state carried its burden of disproving and trying to be unreasonable about. It didn't happen. That's insufficient as a matter of law, and that's why we respectfully ask that this court reverse my claim of armed violence conviction. Thank you very much. Thank you, Mr. Payne, and thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued as quickly as possible. We now stand in short recess for panel change.